## STATE OF MINNESOTA *vs.* F. W. PRATT.

Submitted on briefs Nov. 23, 1892.    Decided Dec. 29, 1892.

**Criminal Complaint Construed.**

> *Held*, that the complaint herein stated facts sufficient to constitute an offense under the provisions of section 11 of an ordinance authorizing and regulating street railways in the city of Minneapolis.

**Conviction Sustained by the Evidence.**

> *Held*, that the evidence was sufficient to sustain a conviction of the offense charged.

**Rulings Admitting or Excluding Testimony.**

> Certain assignments of error, as to rulings of the court admitting or excluding testimony, considered and disposed of.

Appeal by defendant, F. W. Pratt, from an order of the Municipal Court of the City of Minneapolis, *Elliott*, J., made August 2, 1892, denying his motion for a new trial.

W. J. Hield on June 16, 1892, made complaint in the Municipal Court of the City of Minneapolis that defendant willfully and unlawfully obstructed the cars of the Minneapolis Street Railway Company on Douglas Avenue, by moving a large frame building partly onto the track and leaving it there in violation of an ordinance of that city. This ordinance provides that the cars of the street railway company shall be entitled to the track, that no person shall willfully obstruct them by placing any obstacle on the track. That whoever shall after being notified by the driver or conductor by ringing the car bell or otherwise, willfully violate the provisions of the ordinance, shall upon conviction, be punished by fine not exceeding $50, and costs of prosecution, and imprisonment until the fine and costs are paid, not exceeding thirty days.

The street cars on Douglas Avenue were propelled by electricity, and defendant applied to the Street Railway Company to cut the wires overhead and allow him to move the building across the street in the night when travel was suspended. The company sent its men there soon after midnight to open the wires. They met defendant there, and demanded $10 for the labor and inconvenience of opening the wires. The defendant refused to pay this and they went away. He moved the building forward and partly onto one of the tracks, and there it remained all of the next day, when the complaint in this case was made. He was arrested, tried, convicted and fined. He appeals from an order denying his motion for a new trial.

*Little & Nunn*, for appellant.

*L. A. Dunn*, for respondent.

COLLINS, J. Defendant stands convicted of a violation of the provisions of section 11 of an ordinance authorizing and regulating street railways in the city of Minneapolis which section prohibits the willful obstruction of cars by stopping or placing teams, vehicles, or other obstacles. upon, across, or along the tracks.

1. The complaint was sufficient, under said section. It was there-

in charged that defendant had willfully, unlawfully, and wrongfully obstructed and interfered with the running of the cars of the railway company at a certain named point in said city, by placing and stopping a house upon and across the tracks. There was also an allegation as to defendant's being notified of such obstruction by a driver upon the railway. The first assignment of error needs no further discussion.

2. Twelve assignments, from the second to the thirteenth, inclusive, are of the same general character,—all addressed to the rulings of the court admitting or excluding testimony. Undoubtedly a part of that objected to was introduced by the prosecution for the purpose of connecting defendant with the obstruction, by showing that, as a person engaged in the business of moving buildings, he had applied to the proper authorities, as required by an ordinance regulating such removals, and had received a permit which authorized him to move the house in question through a part of the city, and along a route which led over the street railway tracks at the point where the obstruction was found. Such testimony, the application, permit, and agreement (made by defendant with the city building inspector) were clearly competent, as tending to show that defendant was the responsible party, and the person who had caused the house to be placed upon the tracks as it was being moved; and if there was a failure otherwise to prove the year in which the offense was committed, it was fully established by these exhibits. Much of the conversation between the defendant and the manager of the railway company when the former applied to have the electric wires temporarily removed,—the same being suspended from crosstrees attached to poles placed in the center of the street,—that the building might be gotten over the tracks, had little or no bearing, and could not have affected the result. But these conversations, and what defendant said to other persons at the time about the affair, were received to identify him as the offender, and possibly to show that, when placing and keeping the house on the rails, he acted perversely and by design, because of a difficulty with the manager of the company as to compensation for taking down and replacing the electric wires. For these purposes they were admissible. Referring specially to the

thirteenth assignment, it may be said that all of the conversation between the manager and the defendant had been repeated twice, at least, when counsel again attempted to go over it. The witnesses did not differ as to what was said on these occasions, except on one point. The manager asserted that when conversing with defendant he fixed the compensation for removing and replacing the wires at the sum of $10, and this was denied by the latter. The only dispute between these witnesses was well defined and understood, and the court was right when refusing to devote further time to another rehearsal of the conversations.

3. Finally, it is argued by appellant's counsel that the evidence failed to show that the obstruction was willful. Among other things, it is claimed that there was no proof that defendant had been notified by a driver or conductor of his interference with the running of the cars, as required by the latter part of the second paragraph of said section 11. It is very doubtful if a fair construction of the paragraph requires us to hold that the notification mentioned is demanded, except when the obstacle which interferes with the progress of the car is a team or vehicle, or some similar moving or movable object. Certainly, it would be extremely absurd to say that it was necessary in this case, when a two-story dwelling house had been drawn upon the tracks, completely blocking the way, for notice to be given, by ringing the car bell or otherwise, before the obstruction became willful. Yet the testimony was not defective in this respect, as will be seen from a statement of the facts, and which statement will completely refute the contention that the obstruction was not shown to be willful. As before stated, defendant had obtained a permit to move the house, from the city authorities, in which he was prohibited from obstructing the passage of the street cars with it at any time between 5 o'clock in the morning and 11 at night. He then called on the general manager of the street railway company to remove the wires before mentioned, and it was agreed that when he was ready notice should be given to the manager. This notice was given on Tuesday morning, and men were sent out by the manager about midnight. The house was then up to the tracks; but, as defendant refused to pay $10 for the work

which the men stood ready to do, the wires were not taken down. The next morning a dispute arose between the manager and defendant as to the right of the former to the sum demanded, but the latter claims that it was then agreed that men should be sent out that night at 1 o'clock to take care of the wires. No men were sent out, but the defendant placed the building upon one of the two tracks at that point, close up to the wires, kept his men there until 3 o'clock in the morning, and then dismissed them, with instructions to return at 7. The defendant returned at the hour last named, and remained for three hours; and it was during this time that the witness Angle, a car driver, asked him why he was blocking the way, and told him that he wanted to get through. If notice was essential, it was given at this time. The house remained where defendant had placed it, completely preventing the use of one track, until night, when it was hauled back out of the way by the employes of the company; and it is undisputed that while this was being done, or soon after, the defendant, armed with an axe handle and using very profane language, demanded that the employes let the house alone. The only excuse or justification offered by defendant for his acts is that the company had agreed to let him go over the tracks, and had no right to exact the sum of $10 as compensation for taking down and replacing their wires.

The defendant seems to have overlooked the fact that the street railway company could not authorize or empower him to violate the ordinance, nor would any act of such company excuse or justify his disregard of its provisions. This prosecution was not a controversy between the defendant and the company. It was in behalf of the people; for, while the ordinance is of great value to the street railway company,—for it gives it the right of way,—it was enacted primarily, and must be enforced, in the interest of the traveling public, the people who have frequent occasion to use street cars, and cannot be detained and inconvenienced either by the acquiescence of the company in the creation or maintenance of an obstruction, or by the act of some person who, having a difference with the company, undertakes to contest the point by obstructing the free passage of the cars. That is not the way to settle disputes of this sort. The testimony

of the defendant establishes beyond controversy that he designedly and willfully blockaded the track, thus violating the ordinance, and from his testimony alone the court would have been justified in its conclusion.

Order affirmed.

(Opinion published 53 N. W. Rep. 1069.)